Michael Konewko, Plaintiff Appellant v. Advocate Health and Hospitals Corp, Defendant Appellee. Arguing for the appellant, Robert G. Black. Arguing for the appellee, David M. Maxey. Good morning, counsel. Good morning. And thank you for joining us. Mr. Black, whenever you are ready, just be prepared for me to pull the hook. Thank you, Your Honor. Good morning. May it please the court, counsel. As I was preparing for this, it became more and more evident to me under our first issue, which is the issue of the comment during closing argument. That the whole foundation for what we're talking about is commentary that goes outside the facts and evidence. That's kind of the base point, the bottom of the totem pole. And this is the springboard where we're talking about there shouldn't be a reference to financial condition. There shouldn't be a reference to insurance. There shouldn't be an appeal to passion, prejudice, or bias. And the defense here, for want of a better word, was the references in closing argument were to a non-party. And the trial court jumped on that, ruled that the case law talks about it's not relevant where it's a non-party. So if you take that foundation, that it's facts not in evidence, this becomes even more pronounced here. Because this is a fact, one fact removed from a fact in evidence, where we're talking about a non-party. It's just, it becomes even more prejudicial when we're pronounced. There's a quote from the Rush case that we utilized. The jury favors those least able to bear the loss. And what we're talking about here is the nurse for the hospital. I'm not sure what the references were quite about. I don't know if it was about that the, we had the assumption that it was about the nurse is going to have to pay it back. I suppose it could have been that the nurse, relatively speaking, as opposed to the attorney who's going to be getting this money, how long it would take her to make this kind of money. I'm not sure. But either way, that is a significantly prejudicial statement to incur some sort of bias or some sort of sympathy. We had several commentaries here, although objected to, that had an accumulative effect here, despite their objections. And we had one of them that violated the so-called golden rule of placing yourselves in the position of the party being referenced here, the nurse. We had a violation of the in limine order. So all of these together are showing the fact that this is a situation where the statements in closing argument are highly prejudicial and constitute reversible error. I'm looking, too, at the actual allegations here of the nursing care. And there are essentially three allegations, three categories. One is a failure to utilize a two-person assist team or a gait belt or a rolling walker. Second is a failure to properly communicate to ensure appropriate procedures, fall prevention procedures. And third, a failure to properly instruct and assist during the plaintiff's attempts to turn and sit down on the commode. So the defendant's expert says the nurse did a proper assessment. All right. But the nurse beglar, after this proper assessment, disagreed. And her implementation was different. Her implementation was, well, I'm not going to do the two-person. I'm not going to do the gait belt. We're going to do this so-called standby assist. And then there's an issue of whether or not she's got a hand on him when he's moving and turning in front of the commode. Their expert also says you can't prevent a hard fall. Well, then there's still this duty to protect the plaintiff so he isn't in the position of a hard fall. I thought I closed the email. He isn't in the position of a hard fall. And there's still this duty to make sure that he is properly instructed and is going about the turn and the sit-down in a proper way. And my question, too, that pops into my head from the facts, the nurse had to assist him in standing up from the bed. She had to put her arm underneath his shoulder. So this is, what, four to five feet from the evidence from bed to commode. So if she had to assist him in standing up, I'm wondering how she thought he could sit down by himself, which almost sounds like something to the jury, but okay. Both experts agreed, too, this is including the plaintiff's expert, that if it was the standby care, meaning standing by to within range there, so to speak, so if there's a problem, you can hold on to him or grab him, that would not be reasonable in a proper nursing care here. And nurse Begler did admit that that was the type of care, whether you called it minimal assist or standby assist, that she was providing here. So while the nurses were in agreement that that was the wrong state of care, this is what she was providing. There was a comment in the defendant's brief about the causation issue and that their doctor identified causation and their doctor's identification of causation trumped all. And their doctor, Dr. Dusch, basically said that the first surgery caused everything, that everything springs from the first surgery. Dr. Mataragos, however, the treater, said that the first surgery led to some trace weaknesses in the left leg, left quad, that was being treated with physical therapy. And some of that weaknesses that were incident to the first surgery were being, getting a little stronger, but after the so-called commode incident, that those weaknesses were more pronounced, much more severe. So we ordered a CAT scan and working under the assumption that there was an impingement that warranted surgical intervention, which was the second surgery. So from our, the issues we have raised, therefore, are the improper closing argument by those four separate statements, but more particularly the two that are talking about the nurse having to work a certain amount of time to make the money that would, that the plaintiff is asking for. And the one about putting themselves in the nurse's shoes, basically saying to the jury, well, look how long this nurse is going to have to work and you don't want to be her. And the issue of the motion for directed verdict, where the directive verdict was requested on the nursing standard of care, where there was no issue here that all agreed that the standard of care was not met on the standby assist, being given and with the causation issue where the doctor was, we had evidence in the record that rebutted doctor, the defense doctors, experts, doctors characterization that the first surgery just caused everything. And our third issue, of course, was against the manifest way to the evidence. So this is a strange experience, I must say, but I think that I am done with my primary presentation. Under 10 minutes. Yes, this is a strange experience. Sorry. I will ask Justice Jorgensen, do you have any questions in this case. I do. You know, I'll start with the closing arguments because you began there. But here during the closing arguments, there were prompt objections, which were sustained. Right. Right. Correct. All right. And isn't the trial court really in the best position to determine the severity of of a misstep, we'll call it in a closing argument. That is absolutely correct. But I don't think the trial court ever really took it upon itself to do that. The trial court basically in ruling on the post trial motion said the case law says if it's a non party, then this issue about the improper statements and closing argument doesn't arise. So it doesn't look to me like the trial court ever even tried to exercise its discretion here and take a look at this. Because he just concluded all the remarks really focused on the nursing question, rather than the hospital. Yes, Your Honor. All right. So, and they talk about the, the second surgery as well. Why, why was the second surgery undertaken. The doctor believed that from the cast scan and from the way he was reacting. There was a concern over the impingement that the pin may have moved. And that you mean, I mean, the screw. Yeah, yeah. Okay. That it may have moved and the only way to see if it had moved or definitively tell if it had moved was to go back in there and look that he felt that there was enough reason to go back in there and go back in there quickly. All right, but when he did that they found out that in fact this nothing had moved. They were not able to tell that anything had moved. Correct. Well, the inference is nothing moved then right That would be an inference, certainly. Okay. Does it matter that the trial. Judge, going back to the closing arguments, does it matter that he doesn't direct the jury on every occasion to disregard those arguments. Yes, it does. Does that matter. It matters. Does it the first time. I'm sorry, I didn't mean to cut you off. One of the difficulties of doing the Sorry, one of He does. First objection that is raised. He instructs the jury to disregard. Correct. The second one. He just says strike that as I believe is his words. And I think that does make a difference because what everything talks about is object and sustain the objection and instruct the jury, all three. All right. That was that issue, though, was not specifically raised in the post trial motion was it Um, I will be candid, Your Honor, I will. I don't specifically recall if it was or it wasn't I'd have to look Why does, why shouldn't there be a distinction drawn when the comment in a closing argument refers to a non party. Why shouldn't that be the rule that that that is not something that the court considers I actually think that the distinction is it's it can be in this circumstance, perhaps more prejudicial That you're going to garner more sympathy. If you're talking about this individual nurse and you are the hospital. So in this case, it does. It is a distinguishing feature and it is significant. But when they get what my point is, though, that when the jury gets the verdict forms her name's nowhere on there. Oh, It isn't and That becomes, I think, even more of a mystery to the jury. Why the nurse is being referenced here about in closing argument about why she has to pay this off. This is a fact that's even more removed from the facts and evidence. Okay. All right. Fair enough. I have no further questions. Thanks. Thank you, Your Honor. Thank you, Justice Jorgensen. Justice Shostak. Do you have any questions. I do. Good morning, Mr. Black Justice Jorgensen hit some of the questions that I have. I mean, there was some reference in your brief that this nurse is basically maybe not listed as a litigant, but it's basically an agent of the hospital. Correct. The jurors could certainly infer that and and I want to talk to you about the statement that she made with respect to the Walker. It looks like in the 2012 deposition. She indicated that there was no Walker at a different time. She indicated that there was a Walker. And your client indicated there was not a Walker. Correct. Correct. Yes, Your Honor. Just so I got clear. Talk to me about the special interrogatory. Was that inconsistent with the verdict? Well, in terms of that Walker issue, just also to follow up and clarify. Well, I'm sorry. Oh, yeah, I'm sorry. I'm not answering your direct question. So that's No, that's okay. If you had still something to say about the Walker, go right ahead. I'm just just on to that. I mean, obviously, this happened in 2010-2012. She answered her interrogatories or did the deposition. I'm sorry. And no mention of the Walker, but it's seven years after the fact that all of a sudden, the Walker is first mentioned in 2017. Was it charted? Was the Walker ever charted? It was never charted. Never part of the chart. If it had been a part of the chart, obviously, somebody would have inquired about it or asked about it. And the response about why didn't, why did you wait until 2017 to raise the issue of the Walker response basically was, well, you never asked. And, okay, so in terms of the interrogatories, okay, remind me again, your question, Your Honor, I'm sorry. The special interrogatory that was given, was that inconsistent with the verdict? Huh. I can't say necessarily that it is, but I will just maintain consistently that it is a product of sympathy or bias from the closing argument. Okay, I have no further questions. Thank you, Mr. Black. Thank you, Your Honor. All right, Mr. Black, I do have a couple of questions. In terms of this, what you call improper argument, especially involving the nurse, the jury asks a question about awarding damages, but finding no liability, I think, or something like that. Something of that nature. How does that question fit in with the fact that you're arguing this is improper, improper argument? Hmm, okay. I suppose that this was an instance where they were trying to find the hospital, oh boy, no, that's not it. Well, they, in this instance, I suppose that they did not want to have any liability ultimately upon the nurse, although they questioned whether they could still award damages. I must confess, I at a loss about how the jury would be viewing this. Okay. It's not a cop out. I'm sorry. I'm just really. That's fine. In this closing argument, there was a good deal of discussion about money, which is obviously the award requested. Yes. And the, not naming this nurse, but saying, just think of a poor nurse, how many shifts, how many hours, how many years it's going to take. Isn't another cardinal rule of these types of cases that, yes, we know that they're asking for some sort of monetary damage, but it's important not to talk about the source of payment if such payment is to be made. Absolutely, and that's one of the instances that we spoke about springing from how commentary should be limited to the facts and evidence that there shouldn't be a reference, for example, to whether there is or is not insurance and how this is going to be paid or what the source of payment is. Absolutely.  Okay. Okay, didn't the nurse, nurse expert for advocate is disagree with, or wasn't there some confusion maybe that's the way to ask the question between the two nurses the expert and the treating nurse about the difference in minimal assist and standby assist. Yes. How does that affect this particular circumstance. It affects it in that the treating nurse basically felt that minimal assist was the same thing as standby assist right or maybe vice versa but essentially that minimal assist took in standby assist. Whereas the expert felt that there was or said that there was a difference but that standby assist did not meet the reasonable care under the circumstances. So when the nurse was doing what is essentially standby assist that that was not reasonable care, according to even to the defendants expert. Okay. Now, lastly, the question of how this injury or circumstance occurred and why the second surgery. Your client was undergoing physical therapy as you indicated because of some weakness and was in the fact that he had just had back surgery correct. Yes runner. Prior to the hard set incident that we're here talking about. And after the surgery. So, in that window which wasn't very long. Had he ever cried out in pain, as was indicated in this record. Not from the record. No. And he said he thought, didn't he say he thought he felt or heard something pop. Yes, you're already thought he felt something popped. Okay. All right. I don't have any other questions at this time, you will have an opportunity to reply if you choose to if after Mr Maxie. Thank you. Okay. And Mr Maxie you've been sitting there at your desk alone, how are you ready to proceed. I'm very lonely here. Okay. Okay. Yes, may it please the court, David Maxie on behalf of advocate. Good Samaritan Hospital. Thank you for this opportunity. I listened with rapt attention to Mr black, and, you know, my normal procedures to work off of what he said but the justices did the same thing so I'm just going to try to just go through briefly my argument. We all know that attorneys are permitted wide latitude and close the argument, and that the trial judge, the trial court makes the assessment of whether that argument is prejudicial or not, and here, and judge black are here the judge judge shorts concluded that the argument was not prejudicial and that decision, and that determination is reviewed for abuse of discretion. And clearly, there was no abuse of discretion here. We heard a lot about how plaintiff perceives the comments that were made, but there were four comments. And two of the two of them refer to the financial condition of a non party, and the cases are clear that the whole issue is whether it that a comment by the attorney and closing prejudices a party, whether it references a party talks about a party's financial situation here. Everybody knew from the start of this case that the defendant here was advocate Good Samaritan Hospital. In fact, at the beginning of the trial Matt Johnson in his opening states. My client here is advocate Good Samaritan Hospital, and he said there would be a representative here and name the representative Christine Taylor who was not nurse Spangler, and that this is represented for the hospital. So from the get go the jury knows the defendant here is advocate Good Samaritan. And so, now we go back and nurse Spangler came in and testified and left, she wasn't back again. She so they don't see her again, they know she's a witness, and she's not in the very form. She's not mentioned again, other than other than as a witness. So, when we talk about the financial condition that's not what Mr Johnson was doing here. He was basically just the plaintiff was asking. In this case for $800,000, an enormous sum of money for an incident that occurred where he, you know, had a hard sit on that commode. And so he was Matt Johnson was basically just kind of opining, you know, that's an enormous amount of some money imagine how much, how long it would take somebody to earn that kind of money objection. And so the court, after Mr Stettino objected the court sustained that objection, and the first time, I believe, she told the jury to disregard that comment. And then, and this, and we have to put this in context. This is a 45 minute closing argument. And I think it was like 42 pages in length. So, this comment comes up, there's an objection sustained, and, and the jury's order to disregard it. It's important to note that the court at the beginning of the trial also during right before opening said statements made by counsel or arguments by counsel, counsel, you could disregard disregard them and then also in the instructions to the jury that if, if the statement of an attorney, or one of the council there was not consistent with the evidence just disregard it, so they, the jury was very well instructed on this issue as well. The next remark is, as Mr. Johnson is proceeding with this closing, he says somewhere along the way, put yourself in the shoes of, put yourself in nurse beglars, put yourself in nurse beglars objection, sustain. I believe the court said stricken at that point. So that there wasn't even any connection there. It was just, he just made the statement, put yourself in nurse beglars, didn't say shoes, just put yourself in nurse beglars objection, sustain stricken. The next comment is the openly mocking them. It's very clear. It was in our brief, you know, that plaintiff's counsel was haranguing nurse beglars conduct and haranguing that she was lying, implying that she was lying, implying that this whole Walker issue was a lie. And when Mr. Johnson just was kind of talking about that openly mocking them objection, and then the court said, remove the phrase mocking or something along that line. So these comments, all of them were either, they were all objected to, they were disregarded or stricken. And so therefore that cured any prejudice here. Then, and the cases, I cited the case where it says that these comments need to be directed to a party because it's all the question is whether you are prejudicing, whether you are trying to endure sympathy or elicit sympathy for the party, the defendant, who's going to be paying the judgment. Nurse beglar, wasn't the defendant wasn't going to be paid. The judgment, as I said, is nowhere to be seen after she testifies. The next issues. Then if we get to the next issues, everything. And as I heard Mr. Mr. Black, when he was commenting, even he understood that a lot of these issues, they revolve around questions of fact. And so those are jury determinations. And so when we get to the Walker issue, for example, whether the jury believed that she used a Walker or not, that's a question of fact, they heard the evidence. The fact is, is that nurse beglar at the time this came up, it came up after the first counsel that was representing the plaintiff never asked her the question about the Walker. Later on, she was in conversations with counsel here at her, at the advocates firm, our defense firm, and it came out that she used a Walker. So that was immediately disclosed to the plaintiff's counsel, immediately set information. It was fully disclosed. It didn't happen at trial didn't happen right before trial was it was disclosing answers to discovery request. And the jury heard the evidence and they waited and presumably believe she was using a Walker that the place that the Walker was there in the room. So, I, I really, I'm open to questions. I, like I said, normally, I would have it written side by side that the judges questions the plaintiff's answers and respond. But at this point, I'll just, I'll, I'll feel the questions for the panel. Thank you. Thank you, counsel, Justice Jorgensen. Do you have any questions. Um, yeah, I do have a question. You suggest that the, the standard of review on the closing arguments is abusive discretion. And if the court does not exercise its discretion. There can be no decision on abuse or non abusive discretion. Is that right. Well, I, I would disagree on whether the trial court issued his use his discretion. The trial court certainly said that the plaintiff did not meet the burden of proving a prejudicial closing argument the statements that were rendered here were not prejudicial and did not rise to the level of granting a plaintiff a new trial, and also And then also the the cases that I cited I said at least one case there's other cases that it was, and I'll read them into the record. I've got, I'm going to read this just to answer that question about the non party while references to a party's financial status or general generally improper constitute reversible error, quote, the language complained of must not only reasonably be understood referred to financial status of one of the parties, but it must also be shown that it was so harmful prejudicial as to have resulted in the return of an improper verdict. I'm citing to that case shibal verse Greta s ch e i b e l verse Greta g r o e t e k a 183 elap 3d 120 dip and the pages pin sites 141 142 fifth district 1989, and then the case McMahon first Richard Gore, as Inc. And that's 135 elap 3d 211 pin site 223 fifth district 1985. And in those, those two cases, plus the Ligoni case I think I mentioned, say that it must be a party. So, but I disagree with also regardless, it wasn't just the party. He considered all the statements and said, I don't find that this constitute an improper closing argument or that it or that it rose to the level of reversible, you know, reversible Aaron that a new trial has to be conducted in this case. Thank you. All right, so your position is he did exercise discretion with respect to the statement. Is that true. True. Okay. And he did not just simply rule look that all the, the remarks referenced a non party therefore no prejudice. Right, I believe he did more than that I believe, I mean I can't remember, you know, Bible verse what he says that I do not asking you to recall the words in the, in the court's comments. I'll ask you the same question that I asked Mr. Black, does it matter that the trial court does not direct the jury at the time of the statement to disregard it. Oh, um, well, I mean, I believe that he did. I did. I think that, let me see what he said here. I think he instructs the jury on the first statement and does not do it thereafter. And does that matter. I don't. Well, I mean, it certainly helps that he does, but it doesn't mean that he has to. So, he already instructed the jury the first time. No, it doesn't. If you, if you actually say disregard it, then yeah that cures prejudice, for the most part. Okay, I agree with that. But I, it's not absolutely required, it just means that it itself, it cures prejudice, if it's an objection is sustained. That's evidence that hey jury should disregard it. But if you actually say strict strike it or disregard it, that's that then actually cures the prejudice yes right then and there. I'm trying to see because I actually have a verbatim. Right, but that's my, my point is that I believe the trial court in the first instance, directs the jury to disregard the question, or the I'm sorry the statement, but he does not do that. Thereafter, so he strikes it. I think he even sort of in a, it's hard to pick up tone but you know some says, Mr. Johnson, after the objection is sustained somewhat of a kind of a warning, don't do that again because that's your second shot at the same point. So, right. But by, by not by instructing the jury the first time, and then he doesn't say anything, doesn't that create an inference. This is okay. Oh no, your honor here, it's. No, he actually. In fact, those two, those two most offending comments that were made. Okay, I found it here. The first time he goes the jury will disregard that comment that's on page, or 1521, and then the second time he says that are one by five the court says that sustained and stricken from the record, so both of those financial issues. I agree. He says he's stricken from the record. My point is he does not then tell the jury to disregard it. Oh yeah no you're on the inference. Hold on, let me finish my question. The inference, then you can consider this, but you couldn't consider that trial court sets up a pattern, and then deviates from that doesn't that add to the prejudice. Well, I would say no because it's stricken from the record I mean as a juror, you're sitting there and the court says object. First, it was said objections, it's just the jury will disregard the comment second time, it's even more strenuous it's that sustained and stricken from the record and then he might have said please Mr. Johnson at that point. But, yeah, I would say that stricken or disregarded are the same. If that's, that's the question I would say the courts interpret, though, those two if they're stricken to disregard it as the same that the jury is to disregard and that cures the prejudice. My concern when I was looking through the record here was whether he actually said disregarded or stricken for both of those comments and, and yes the trial judge did. Thank you. Okay, um, you've suggested that comments directed to a non party just doesn't, there is no prejudice period, because it's a non party. Correct. Okay, but here, I mean, she's clearly the agent of the defendant. He's not just some random witness. Does that matter. I would say no, according to the case law, it must be a party. The court, the case law says must not only reasonably be understood refer to the final financial status of one of the parties, and it isn't one of the parties, she was told the party is advocate good Samaritan, and she is just merely a witness is coming into testifying yes she's an agent, because the hospital can only be held liable under these vicarious liability cases through their agent. But you're talking 45 minute closing argument. Couple references made, I mean a jury is is taking this case very serious this evidence is very serious here, and so that, you know, to, you know, a comment that stricken a comments told to disregard the jury that that's not going to cause a prejudice this jury didn't go back to the room and think, Oh, wait, I mean we don't know what they were thinking but we can assume they're not thinking about this nurse they're thinking about the hospital liability I mean it was the distinctions that were made. I mean, I mean for experts or something like 12 or 15 witnesses over nine days of testimony and a couple statements that were made under an oral argument about a non party, and that somebody wasn't going to be paying this judgment everybody knows that this insurance, this company's advocate good Samaritan hospital, everybody knows hospitals have the money and the resources to pay these judgments I mean, I just don't think that that a jury of 12 people are going to be, you know, wondering about a couple errant statements that were stricken from either disregarded stricken for the record. When they're considering the weight of this case, and the allegations that were made against the hospital, and Mr Canucos injuries and Mr Canucos, you know that the causation testimony of Harold Deutsch who says you know he didn't have this that they didn't improve the screw moved, and these are just general conditions that happen to a person that has a surgery I mean it was a synovial cyst attached to his nerves. I mean, so they, they had a lot of other very major issues to sort through. Okay, and I don't believe you have no further questions. Thank you. Thank you. Thank you. Do you have any questions. Yeah, I, you know, I think, I think, Council that when you sat as a trial court judge, as all of us did, and you heard cases, and you heard in particular criminal cases. During closing arguments in both criminal and civil cases trial court judges sit at the edge of their seat, because closing argument is the last like you said 40 minutes or a half an hour or an hour of a trial that took you seven to 10 days to try. And the last thing you want is some lawyer to screw up the past seven days and closing argument. And so that's why I think we're all very conscious of a closing argument as is the case law, you had for improper prejudicial, if you will, closing or statements in a 40 minute closing argument. So, you could argue, you think 40 minutes isn't that long, but an improper presidential or prejudicial or sympathetic statement one every 10 minutes is not that small of an argument when you're sitting there as a trial judge thinking oh boy, we just, we just put on two or three or four experts. We just first of all takes you how many days to pick a jury closing arguments are a huge part of what we're doing as trial court judges. Now, in this particular case, you have a truck you have an attorney, a defense attorney, it who came in and said to himself or said to his team. She is a non party. Therefore, we can go forward with the statement. Um, just because she was a non party, did he did he feel it was acceptable to garner sympathy from the jury? Oh, absolutely.  That's not proper proper correct. It seems to me he was playing hard and fast with the rules because, as you argue, argue here today she was a non party. Therefore, we can say the statement. But how does the jury know that she is a non party. Well, first of all, it wasn't said there was no intention for Mr. Johnson to make these statements to to endure sympathy or to try to use her as somehow, you know, letting the hospital off the hook. This, as, as, as he said in his argument before Judge Schwartz during the post round motion, it was just what he was trying to do is put it in context, he's saying the plaintiff is asking for $800,000 here. And think of how long it takes somebody to earn $800,000. That's all he was saying he wasn't trying to get her sympathy from anybody he was just telling them in context putting in context there's a different way to interpret what he was saying. He wasn't saying right is that in retrospect, do you think that was the right way to say it. Well, I think Mr. Mr. Johnson said, you know, in retrospect, no, he, he, he, he said he wouldn't have said that, but it wasn't. How did the jurors know she was a non party. Oh, well they knew first of all when they come into the court, the first day of the trial Mr Johnson is there with his client and says my clients advocate Good Samaritan Hospital I've got my representative here at the table. And then at during the during the trial she was only came as a witness she was not sitting at counsel's table she disappeared, there was, she was not referred to again, other than an argument. And so, if it weren't, if it weren't for a nurse beglar would there have been a case. Yeah, there would have been a case because they had also criticized the physical therapist. But back to answer your question she also wasn't nurse beggar wasn't on the verdict form. She, it was only advocate Good Samaritan Hospital, the jury knew that when they were awarding whether they would award the damages or not it was against advocate Good Samaritan Hospital nurse beggar was nowhere on that verdict form. She was mentioned, and maybe in an instruction regarding agents that JC sales, the physical therapy and nurse beggar were agents the hospital. Other than that, there was no nothing the jury would have seen would have would have told them that she was going to be responsible for this judgment. Wasn't there. Wasn't there a motion in lemonade with respect to making statements about insurance or finances or any sympathy, wasn't there a motion in lemonade. There may have been emotional lemonade about insurance and that insurance and finances, and may have been finances. Probably. Yes, there may have been regarding. Yeah, mentioning about advocate because Samaritan's finances, perhaps, or the plaintiff's financial abilities, his position, but it didn't have anything to do with nurse beggar she wasn't wasn't a party had nothing to do with it. That's a little insulting to me, to be quite honest with you and you know oftentimes, you know, I don't really show my hands but that's a little insulting. I mean when you say everyone knows who's going to pay for it. How do you know that you have 12 jurors sitting there, how do you know every one of those jurors knows where the money is coming from. As a matter of fact, you're precluded from letting the jurors know where the money is coming from aren't you. Correct. Yes. So how do you know that the jurors know where the money is coming from. Well, I'd say that the that it's advocate good Samaritan hospital is defendant, and that who's the judgment is going to be rendered in this case. So, it would take to try to figure out that, that it doesn't, it doesn't follow to me, I mean she's not she's not on the verdict form. She's not a defendant. Nobody's asking her for the money. He she's not mentioned. Why did he mention that it would take her a long time. He didn't he, he didn't. He didn't he said he did not he said nurses and physical therapists, could you imagine it on a nurse or physical therapist, how long it would take to pay he didn't mention nurse bagger. Right, it had nothing right, it didn't mention her he just said a nurse's salary he was putting it in context hey this is what a nurse. This what nurses make this physical therapist make. No, he said exactly that in the first thing that popped into my head with how many shifts, how many years, a nurse and a physical therapist in their life would have to work to earn $800,000. Yes, that's that she would be personally responsible for the money judgment. I don't believe so because he didn't mention her name he's just putting it in context your honor. How many nurses do we have testify here Council, we had nurse Vancouver nurse Shriver, and nurse beggar Shriver was an expert but she was a nurse. Right, they were experts, how many nurses that were potentially the wrongdoer if you will hear testify nurse beggar that was it correct. No, nurse Vancouver nurse Vancouver as well. Nurse Vancouver, didn't refer to the financial positions of those individuals. I don't believe so because it just was a, it was a statement about nurses and physical therapists, it was not referring to those two, it was not referring to beggar or to Vancouver or to PC sales just said a nurse or physical therapist. Didn't it assert facts that weren't into evidence. Well, I don't believe so he's just basically just, he was putting in context how much money the plaintiff was asking for, and just saying that, just think of that how many shifts you'd have to work to get that. I mean, he did not mention their names he was not saying they're going to pay for their know where to be. They're not in the jury verdict for you, you indicated that the judge struck these and asked to be disregarded when you have for improper statements that are asked to be disregarded and stricken hasn't the bell already been wrong after number one, certainly after number two. How do you unring that bell, and did the judge do it here. Well, I mean, you know, the two of those comments dealt with what we just talked about, and then one was a fragment of a statement putting yourself in the shoe, put yourself a nurse beggars objection he didn't finish the thought it wasn't, there's nothing you got to get up and whatever he didn't do he wasn't able to do that it was stopped in cold in the tracks so that's that's not prejudicial and then openly mocking them was in response to plaintiff's counsel openly just lambasting nurse beggar, and just talking about it. And I would submit to you that exploiting people's lack of memory because they were doing that and have them on the stand for hours and basically openly mocking them objection. You know, it was, you know, they objected and then the court told you know said remove the word mocking. And then they moved on. I don't think that these are alarming substantially prejudice comments we're not talking here. When we look at the cases where the courts have reversed, based on my closing argument you have the pleasant case, where it's just on and on every I believe that was mentioning insurance, that the party was. No, that was not. Which case was it. Torres. Oh the tourist case all that in that case, I bet. And then I don't think the statement was ever finished and Torres either. Yeah, but there they were that actually came out that it was saying that in Torres. See it was explicit reference that okay the defense got towards this was reference to a forbidden topic, the client's right to practice medicine by reason of the lawsuit. The client, the defendant, not a nurse who's not even a party to the case. It's completely an opposite, you know, you're a lawyer I'm a lawyer, we could say quote unquote party. What does the jury know a quote unquote party to a lawsuit. Well, they, they, the jury's going to know it because as the beginning of the trial, you introduce the parties Mr can do corporate the plaintiff advocate good Samaritan Hospital for the defense is the defendant. They know that right I can that when you say they also I'm, I'm for the plaintiff and I'm for the defendant, how does the jury know those are the quote unquote party. Well, they're, they're at the beginning of the trial they're introduced and then on the verdict form it shows who you know you rule in favor plaintiff or you rule favor on the defendant the plaintiff is Canuco and the defendant is advocate good Samaritan they knew who they were. I mean you would have to think the jury here. You know, is not paying attention to the instructions and we know that they are they're told to. And that's why there's no prejudice here. This was a very serious case, it's not about the financial status of a nurse doesn't never did talk about bagel or it says nurses and physical therapists now, you know, this case is about an injury to somebody whether the hospital was responsible or not. We have so many witnesses so many days of testimony. That's what the jury was focused on when they go to a jury you're at your absolute you're absolutely correct you are absolutely correct and that's exactly what I started out with you have how many would in retrospect you do that again. That is the problem with jury trial. It all comes down to whether you like it or not a closing argument, and that's why judges sit on the ends of their seat. I mean in this case both parties agree that the nursing standard of care was not met with respect to stand and sit. Correct. The nursing standard of care was met. According to our, if it was a stand and assist was the, what was what you were supposed to do was that nursing standard of care met wasn't there supposed to be a gate felt because prior shift, didn't they say it was two people in a gate belt. That was a prior shift, but our, but nurse beggar came in and assessed him several hours later, and gave him the assessment test, got him up from the bed with her arm under his shoulder walked him to the commode had a hand on him the whole time providing minimal minimal assist, even at the point of turning the plaintiffs to sit on the commode she was, she was providing minimal assist according to both her testimony and nurse nurse driver the experts testimony so know that the standard compare compare was completely complied with here. Absolutely. Okay. And that's what, and that's what we should be talking about nothing but the standard of care nothing but the evidence, but as opposed to that we are now talking about a closing argument. Yes, and I'm not, I'm not coming one way or another. I think it's just, I think it's just a warning to attorneys both plaintiff defense both criminal criminal and defendant that closing arguments are a huge part. They're not just a wrap up the jurors are sitting there with bated breath waiting to hear what you're going to say in closing argument. And as I say the judges are sitting there at the end of their seat saying, pray God that this doesn't screw up because I just spent two weeks of my life on this trial. So to say to cut the hair and split a hair and say, Well, she wasn't really a party. I mean, how did the jurors know that in closing argument we have to be very careful what we say, because we're not dealing with people in the jury box that are legal minds we're dealing with your cross section of your society your jurors. So that's what we're looking at when we're talking about a closing argument. Keep, we're keeping in mind what those jurors, the minds of a juror who is not a lawyer, what they are thinking, or what they are interpreting by what was said, that's always trying to say to you but I appreciate your arguments I understand where you're coming from and I thank you for your time today. No, I thank you, Judge, Your Honor, Justice. Okay, Mr. Maxey I just have a couple of questions. I'm going to follow up on one of Justice Shostak's points. You said that Mr. Johnson introduced a representative of advocate who was sitting at the table with him. I think you said it was a gentleman but I can't remember his name. And then there were other witnesses but who was the real face of this particular incident, other than the plaintiff, who are the two faces everybody was probably looking to we're looking at during this Yes, the two faces were Nurse Begler, Lisa Begler and, and physical therapist JC sales, and the person introduced at the table was Christine, Christine Taylor. Okay. Weren't they weren't the jurors also concerned about the plaintiff who was of course sitting there as well. Oh, absolutely. The plaintiff. So the, the main, main players are the main players for this jury was the plaintiff Mr. Nurse Begler, and JC sales and physical therapist and then you have a room full of experts that come in. Yes. So, we're talking about the, the juxtaposition of the plaintiffs recollection of the incident, and the nurse who actually was there when the alleged Those are the people that are the targets here whether they're parties or whether they're whether they're, you know, people of interest, they're the people. Don't you think that the issue, or don't you think that the question then that was asked of the trial court by the jury shows. And this is of course after after oral or after closing argument, and it somehow show a sympathy or a confusion, at a minimum, about what their job was and who they were supposed to be actually thinking about and and judging. Well, I think that they, they wanted to give the plaintiff some money. They wanted to cover some of those expenses. And we're wondering how they could do that. Yes. So that would. Yeah, I think that that question was basically, is there a way that you could cover his expense for whatever that second surgery and nothing more. I'm not sure. Yeah. But by the same token, they really didn't want to, according to the question. I think they said without finding liability or something like that. Correct. Who are they going to find liability against I don't care whose name is on the jury verdict, but who are they thinking about as they sit there and try to make this decision. I think they're thick. Well, isn't it the two faces that they have been most relying on during the course of these difficult trial days. I would say the three faces because JC sales was also you know the physical therapist and the nurse on the hospital side and then the plaintiff on on the other side. Yes. Okay, but JC sales was not there at the time of this alleged incident. Oh yes, yes. There was testimony about it. The testimony about the incident probably was the most, most compelling. He cried out in pain. She, you know, assisted him. I mean, you know, it was, this was a bit of drama, wouldn't you say, yes, yes. Okay. So that leads me to probably my last question, I realized that the your position is that this nurse is not a party, and we know as a matter of law, she is not. However, this reference to how long would it take, and being in her. You know most people know that statement is in her shoes, could be a lot of other things but shoes is probably likely it, she may not have been a party, but didn't those comments. Whether they were referring to the fact that he wanted $800,000 and that was a lot of money or not, wasn't there a sympathy that was introduced by those statements which should not have been. I don't know how the jury perceived that statement. It was perceived from Mr. Johnson perspective, as a, to put it into context what what the amount of money the plaintiff was asking for. And I also want to say that the special interrogatory puts to rest, the issue of their liability, so that especially if they answer the special rock you were the physical therapist or the nurse negligent know. So all this, this talk here, it'd be the jury is doing its job it's not fettered by these ideas of a couple statements during closing argument proper improper context or not. I mean the context of it from Mr. Johnson's perspective is that it was putting, putting this whole amount that he's asking the context it was objected and stricken from the record. Objected disregarded. I don't believe those comments is enough to upset an entire jury that took nine, you know, nine days and 15 witnesses or whatever it is. But, no, I don't believe it introduced sympathy. Thank you. No. Well what about the, the, not only the $800 but wasn't there some comment about look how much money was spent in this case on experts, and wasn't that pointed directly at the plaintiff, because, and the inference being well he's got a lot of money anyway. Again, no, I don't see it that way and I think that's the problem with it is that you're the statement has to be clear direct it has to clearly be interpreted by the, by the jury this way and no, it's not interpreted that way that's not it again it's just not attacking the plaintiff, or thinking the plaintiff is responsible for that cost it's just saying that these cases costs a lot of trying to look at that particular quote again, I can see that one. That one said, and then ask you with all the expert witnesses that have made all this money in this case and ask you to order somebody, some money that would take years for nurses and physical therapists cut off, I mean again he didn't finish it objection sustained stricken that stricken for the record. So I think that when, when, when the when it's uttered and it's stricken a sustained and uttered again stricken or disregarded and the other second I've stricken and sustained. Out of all this 45 minute conversation he's having closing argument, I don't think that it rises to the level of extreme prejudice and tainting the jury, the jury answered that inter special derogatory there was no negligence here. I mean, they didn't even reach the issue of damages. That may have been an issue on day they didn't get that far. All right. Thank you. I have no further questions. And now I will return to Mr black. Do you have any reply that you wish to offer. Yes, Your Honor, just briefly. After listening to that portion of the argument I believe I now can answer the question about what the jury meant when it said, or asked if it could award damages, but find no liability. And I think there's two answers. Number one is Justice Hutchinson was just talking about confusion, they were confused they wanted to give the plaintiff, some money. But they didn't want to, you know, they, well they wanted to give the point of some money somehow. The other answer would be, and Justice Shostak was alluding to this in terms of garnering sympathy. She asked how does the jury know that the nurse is a non party. This, this is a. This is something that comes out of sympathy, awarding damages but finding no liability because they didn't want to bang the nurse, so to speak. There was a comment that by counsel that, and this was before Justice Shostak questioning to the, to the effect of everybody knows the hospital has the resources to pay that kind of judgment. That's kind of dovetails into that. So, that would be the two pronged answer to that question that I did not have a easy time answering before. Now the cases are talking about, excuse me, use the language about needs to be directed to a party. And that's what's in the language but that doesn't necessarily mean it's restricted by that language we did cite the in our reply brief the Mondelli versus checker taxicab company that disparaged any distinction. Based upon a non party already attempted a distinction based upon non party status as without merit. But in this individual circumstance, in particular, where the person that's being discussed or a person is being discussed or alluded to is an agent of the party, and her conduct is directly at issue. I don't think it gets any clearer that's how direct that is, and what we're looking at here. Council had said, this case is about an injury to somebody. And that's exactly correct. It's not about the first thing popping into somebody's head is how many shifts a nurse would have to work to earn 100 $800,000 and it's not about asking with all the expert witnesses that made all this money in this case, and then a word to get some of money to the plate of how many years would take a nurse to make that potentially or it's not about. Oh, telling mocking somebody about putting them on the witness stand for so long and and it's not about putting yourself in somebody's whatever that is shoes or position or place I don't know how else you can interpret that. And just going back to these comments. Yes, the first one, the jury was admonished to disregard. The second one, the court said sustained and stricken from the record, and did add the commentary please Mr. Johnson. The third one about mocking objection is sustained withdraw the phrase mocking them. And the fourth one, which is the put yourself in Lisa beggars. The court just said, strike that. And that's it. And I think those absolutely do make a difference. Beyond. Well, if the court does not admonish the jury instruct the jury. And that's all I have for right now. There's other questions, we would ask that the judgment be reversed in the matter remanded. Thank you, Mr. Black Justice Jorgensen Do you have any final questions. Mr. Black you're asking that it be remanded and for a new trial. Um, we prefer remanded for entry of the JNLV, but either trial. Okay. All right. Thank you. Yes. Justice Shostak Do you have any final questions. No, nothing. All right. And I know you will say thankfully, Mr. Black, I have no final questions. All right. Thank you counsel for your argument this morning, it was very helpful and very candid and we will take this matter under advisement and issue a decision in due course. At this point we will leave the meeting, Justice Jorgensen will you initiate. I will. Thank you. All right, thank you. Thank you.